UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ERIC D. BECRAFT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 1:08-CV-80 PS |
| | ) |
| NORFOLK SOUTHERN RAILWAY | ) |
| COMPANY, a corporation | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Eric Becraft was injured after slipping and falling from a train operated by his employer, Defendant Norfolk Southern Railway Company. Becraft sues for negligence under the Federal Employers' Liability Act ("FELA"), but Norfolk maintains that his claim is precluded by another federal statute, the Locomotive Inspection Act ("LIA"). Norfolk seeks summary judgment on this basis. [DE 19]. Because the LIA cannot be read to preclude Becraft's FELA claim, Norfolk's motion for summary judgment is denied.

## BACKGROUND

Plaintiff was working as a conductor on a stopped train that was waiting for another train to pass. Becraft Dep. [DE 25-2] at 4-5, 76. Ex. F. Pursuant to Norfolk rules, he and the crew began to dismount their own train in order to be in a position to inspect the passing train. *Id*. at 31-32, 85-87, Ex. F. During winter weather conditions, Norfolk requires its employees to wear safety footwear which include metal spikes on the bottoms. *Id*. at 14-15. Becraft stated that he had tried to get out of wearing these shoes in the past but he was nevertheless required to wear them by Norfolk. *Id*. at 6.

With the weather being cold and icy on the date of the incident, Becraft wore the company-issued spiked shoes as he attempted to dismount the train. *Id.* at 14-15, 88. He stepped onto a metal platform, but he slipped and passed under a handrail, falling to the ground and injuring himself. *Id.* at 86-87, Ex. F. The platform was smooth steel with dimples varied along its surface. *Id.* at 5. During his deposition, Becraft described the conditions leading to his injuries. "I believe, with the locomotive, in conjunction with the safety footwear that I was issued, that it left for a condition that allowed the slippage of my foot to come out from under my weight of myself." Becraft Dep. [DE 25-2] at 5. He added, "the steel itself is slippery versus the spikes that are on your feet. It kind of resembles like if you would wear golf spikes on a tile floor, or something like that." *Id.* at 14[1]

Becraft's complaint alleged claims under the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701 *et seq.*; Safety Appliance Act, 49 U.S.C. § 20301 *et seq.*; the Code of Federal Regulations, 49 C.F.R. §§ 229.7, 229.45; and a negligence claim pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* He withdrew all but the FELA claim in his response to Norfolk's motion for summary judgment. Pl.'s Response [DE 25] at 7. So the only remaining issue is whether the LIA precludes Becraft's FELA claim. Although a federal statute can preempt conflicting state laws, one federal statute cannot technically "preempt" another federal statute. *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004). However, if the two federal statutes address the same subject matter, one may implicitly repeal the other, resulting in a "preclusion" analysis. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004)

---

[1] I am presuming that Becraft is referring to metal golf spikes which are now a bit of a relic. It used to be that all golf spikes were made of metal. But in recent years, many golf courses have banned metal spikes because of the damage they do to greens. So weekend hackers now have to play in spikes made of rubber. Anyone who remembers playing golf on spiked up greens appreciates the change.

(stating that for preclusion to occur there must be either an "irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the other").

## DISCUSSION

FELA was enacted in the early twentieth century during the "heyday" of American steam railroads. *See Grimes v. Norfolk Southern Railway Co.*, 116 F.Supp.2d 995, 999 (N.D. Ind. 2000) (citing *Williams v. National Railroad Passenger Corp.*, 161 F.3d 1059, 1061 (7th Cir. 1998). It was drafted to provide a remedy to railroad employees "for injuries and death resulting from accidents on interstate railroads." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 523, 542-43 (1994). It provides that railroads:

> shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. 45 U.S.C. § 51.

The LIA, formerly known as the Boiler Inspection Act ("BIA")[2], functions as a supplemental amendment to FELA, written for the purpose of facilitating employee recovery. *See Urie v. Thompson*, 337 U.S. 163, 189 (1949). It prohibits the use of a locomotive unless "the locomotive or tender and its parts and appurtenances (1) are in proper condition and safe to operate without unnecessary danger of personal injury; (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and (3) can withstand every test prescribed by the Secretary under this chapter." 49 U.S.C. § 20701. The Federal Railroad Administration ("FRA") has issued regulations concerning locomotive safety standards and inspections. *See* 49 C.F.R. §§ 200 *et seq.*.

---

[2]The terms LIA and BIA are used interchangeably in this opinion.

A rail carrier's violation of LIA is negligence per se under FELA, and subjects a railroad to strict liability. *Coffey v. Northeast Ill. Regional Commuter R. Corp.*, 479 F.3d 472, 477 (7th cir. 2007); *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298-99 (7th Cir. 1996). A rail carrier may violate the LIA either by breaching the duty to keep all the locomotives parts and appurtenances in proper condition and safe to operate without unnecessary peril to life or limb, or by failing to comply with a regulation issued by the FRA. *Id*.

Beyond LIA violations, FELA also imposes a general duty upon railroads to provide a safe workplace. *Id*. at 300. FELA "is meant to offer broad remedial relief to railroad workers." *Lisek v. Norfolk & Western Ry. Co.*, 30 F.3d 823, 832 (7th Cir. 1994). Put another way, "FELA allows recovery in a broad range of situations, while liability under the BIA only occurs under narrow circumstances." *King v. Southern Pacific Transp. Co.*, 855 F.2d 1485, 1489 n. 1 (10th Cir. 1988). To establish general liability under FELA, a plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm and that the breach played any part, even the slightest, in producing the injury. *McGinn*, 102 F.3d at 300.

The parties do not dispute that the LIA has some degree of preclusive effect on FELA claims; the only question is how much and whether it encompasses Becraft's claim. It is well settled that where state legislation and state tort claims touch upon areas occupied by the LIA, the LIA controls. *See Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 611 (1926). Far less settled, however, is whether a claim under FELA, a federal general liability statute, is precluded by LIA, a strict liability law. And if LIA does serve to preclude FELA claims, to what extent?

I can safely assume that where the issue raised by a FELA claim is directly covered by a regulation issued pursuant to the LIA, then the claim is precluded. I make this assumption based on the similar conclusion made by the Seventh Circuit in *Waymire v. Norfolk and Western Ry.*

4

*Co.*, 218 F.3d 773, 776-77 (7th Cir. 2000) with respect to FELA claims and the Federal Railroad Safety Act ("FRSA"). FRSA, like the LIA, is a strict liability statute regulating railroad safety. 49 U.S.C. § 20101 *et seq*. It authorizes the Secretary of Transportation to issue regulations and orders pertaining to railroad safety for the purpose of supplementing existing laws and regulations. 49 U.S.C. § 20103. The *Waymire* court took the well developed history of FRSA/state law preemption cases, and reasoned that the FELA claims should be similarly precluded if they are "inconsistent." *Id*. at 777. So, for example, in *Waymire*, the plaintiff was precluded from bringing a FELA claim alleging a train was traveling at an unsafe speed and that inadequate warning devices failed to prevent injury. *Id*. at 776-77. Since there already existed a series of regulations setting maximum speeds and providing for the installation of a certain type of warning device, the Seventh Circuit found that FRSA aptly "covered" the field, and therefore precluded the FELA claim. *Id*. at 776.

Taking *Waymire*'s lead, I must first determine whether Becraft's claim is covered by the LIA. The Supreme Court has said that the LIA "extends to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Napier*, 272 U.S. at 611. But "the term 'parts and appurtenances' does not include every item of equipment that conceivably could be installed on a locomotive." *Mosco v. Baltmore & Ohio Railroad*, 817 F.2d 1088, 1091 (9th Cir. 1987). *See also*, *Southern Ry. Co. v. Lunsford*, 297 U.S. 398, 402 (1936) ("[M]ere experimental devices which do not increase the peril, but may prove helpful in an emergency, are not [within the BIA]."). Instead, the term "parts and appurtenances" refers to "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [Secretary of Transportation], are within the statute." *Id*. at 402.

Equipment and devices which fall outside of this definition, "have not been excluded from the usual rules relative to liability," *id.*, and in this case, the applicable liability rules are set forth by FELA. The language used to define the LIA means that the field occupied by the act is not, as Norfolk suggests, anything and everything that could possibly touch the train or anything and everything involving train safety. *See accord, Weaver v. Missouri Pacific R. Co.*, 152 F.3d 427, 430 (5th Cir. 1998) (finding the LIA did not preclude FELA claim that railroad should have installed screens to prevent employees from being hit by bottles thrown from outside); *Mosco*, 817 F.2d at 1092 (first dismissing a BIA claim based on railroad's failure to provide protective window screens and then finding that the same facts gave rise to a potential FELA claim); *Terrell v. Soo Line Railroad Co.*, 2005 WL 4882750 at \*\* 3-7 (S.D. Ind. Sept. 1, 2005)(finding the LIA did not preclude a FELA claim based on inadequate seat cushioning). These cases teach that the LIA applies only to aspects of the railroad that fit within the LIA's definition – the locomotive, its parts, and appurtenances – and no more.

The gist of Becraft's claim concerns the safety of the footwear which Norfolk handed out and ***required its employees to wear***. Not only would it be ludicrous to call a pair of shoes an "integral or essential part of a completed locomotive," but it may not be labeled an "appurtenance" in any fashion since it is not even connected to the train. This conclusion might be less certain if there existed some regulation written pursuant to the LIA that addressed clothing and footwear requirements. The fact that Norfolk has not pointed to any such regulation, and I have found none myself, emphasizes that the LIA is not broad enough to occupy the field of footwear safety.

Norfolk instead focuses on 49 C.F.R. § 229.119(c) which provides that: "[f]loors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that

6

creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing." But this one regulation, which asks for railroads to keep its floors clear of tripping hazards, does not render the LIA as the lone arbiter of anything that might otherwise touch those floors, including a railroad employee's shoes. Becraft says Norfolk required him to wear shoes which were similar to wearing golf spikes on a tile floor. Norfolk argues that compliance with Section 229.119(c) makes this allegation meaningless. Not so. Suppose Norfolk had required Becraft to wear eight inch stilettos and dance the Cha-cha. Norfolk surely would not be absolved of liability for resulting injuries because it comported with the LIA's requirement to keep its floors clean.

A plain reading of Section 229.119(c) shows that it has nothing to do with footwear. In fact, Norfolk went to great lengths, before Becraft withdrew his LIA claim, to prove this very point. As Norfolk explains in its initial brief, "the FRA regulations do not contain any requirements regarding proper footwear to be worn in conjunction with locomotive platforms," and "there are no locomotive regulations governing the proper combination of footwear and platform..." Def.'s Br. [DE 21] at 10-11. So Norfolk's own argument made in its opening brief undermines the position it now takes.

In addition, this particular flooring regulation which Norfolk relies on to argue preclusion was examined by the Seventh Circuit in *McGinn*. In that decision, the Court dismissed a BIA claim raised by a plaintiff who tripped over luggage placed on the engine cab floor. *Id*. at 297. The Court held that the luggage was not a tripping hazard under the regulation because it was not "an integrated part of the engine cab" and was not an "object[] of which the engine cab is *comprised*, such as protruding floor boards or bolts." *Id*. at 300 (emphasis in original). Disposing with the BIA claim, the Court then addressed the plaintiff's FELA claim, but made no

7

mention or suggestion of a possible preclusion concern. *Id*. at 300-301. Instead, it dismissed the FELA claim because of a total lack of evidence of employer negligence, consequently implying that the showing of some evidence would allow a FELA claim to survive despite the existence of the flooring regulation. *Id*. Using *McGinn* as a guide, I can conclude that dangerous footwear, like a piece of loose luggage, is not regulated by the LIA, but nevertheless may subject the railroad to liability under FELA if there is enough evidence to show negligence.

Becraft's use of the term "platform" in the description of his claim does not, as Norfolk argues, automatically trigger the LIA so as to preclude all other liability. When asked to describe the locomotive's involvement in his injuries, Becraft stated that, "The locomotive platform in question....[i]n conjunction with the flat spikes on that surface, it just made for a dangerous condition." Becraft Dep. [DE 21-2] at 5-6. But just because Becraft described his claim as one in which his Norfolk-issued footwear touched the Norfolk-maintained floor, he did not encroach onto the LIA's area of governance. The shoes were not "integrated" or "comprised" of the locomotive floor. *McGinn*, 102 F.3d at 300. If one believes Becraft, the footwear was the catalyst of Becraft's claim, not the floor itself. Even if the floor was completely LIA-compliant, the usual rules of liability do no permit a railroad to actively create dangers that occur outside the LIA's field.

*Terrell* represents of recent example within this circuit of a court recognizing the limitations of the LIA's preclusive effect against potential FELA claims. In *Terrell*, the plaintiff claimed his injuries stemmed from locomotive seats that were unsafe because of inadequate air cushioning. *Terrell,* 2005 WL 4882750 at * 2. Judge Tinder found the employee's FELA claim was not superceded by the LIA, despite the fact that the defendant had complied with regulations regarding the secure mounting and bracing of cab seats. Id. at * 4. (citing 49 C.F.R. §

8

229.119(a).) Judge Tinder noted that "even if Defendant did not violate the LIA or its regulations, this does not preclude a finding of liability under the FELA." *Id*. at * 4. Interpreting *Waymire* and other preemption cases to allow FELA claims so long as they are not inconsistent with existing FRA regulations, he found the LIA did not address seat cushioning and that the FELA claim could therefore move forward. *Id*. at ** 5-6. Becraft has even less proximity to the LIA's field of coverage than the plaintiff in *Terrell*, as footwear is more tenuously related to the locomotive's parts and appurtenances than the air cushioning in a seat secured to the locomotive. Becraft therefore has an even stronger case against preclusion.

      The *Waymire* opinion, which Norfolk wishes to see extended to give the LIA wide enough preclusive effect so as to prevent Becraft's claim, is distinguishable. First, as discussed earlier, there is no regulation directly addressing footwear as there were regulations providing for the maximum speeds and warning devices at issue in *Waymire*. *See also*, *Grimes,* 116 F.Supp.2d at 1003 (finding FRSA silent as to issue of walkways and so refusing to extend *Waymire* to hold that FRSA precluded FELA claim); *Wilcox v. Transportation, Inc.*, 2007 WL 1576708, at ** 6-7 (N.D. Ind. May 30, 2007)(refusing to extend *Waymire* to hold that FRSA precluded FELA claim based on injuries sustained over time by walking on railroad ballast). Second, *Waymire* addressed the preclusive effect of FRSA, and not the LIA, over FELA claims. Norfolk offers no instances of a court dismissing a FELA claim because of LIA preclusion, and I can find only examples to the contrary. *See Terrell*, 2005 WL 4882750 at ** 5-6; *Mosco*, 817 F.2d at 1092; *Weaver*, 152 F.3d at 430. And though I have my doubts that a FELA claim could survive which directly opposed an existing regulation written pursuant to the LIA, FELA may be used in the areas, such as footwear, that are plainly not covered by the LIA. In this sense, the LIA serves its originally intended function as a "supplement" to FELA, not a replacement. *See*

9

*Urie v. Thompson*, 337 U.S. at 188 ("[I]t has been held consistently that the Boiler Inspection Act supplements the Federal Employers' Liability Act by imposing on interstate railroads 'an absolute and continuing duty' to provide safe equipment."); *King*, 855 F.2d at 1489 n. 1.

Third, unlike for the speed maximums and warning devices at issue in *Waymire*, there is not a history of preemption cases blocking state law claims about unsafe footwear. The Supreme Court established in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 675 (1993) that state law excessive speed and inadequate warning device claims were preempted by FRSA, and *Waymire* worried that it made little sense to allow claims based upon the same conduct to go forward under FELA. 218 F.3d at 776. In contrast, Becraft's FELA claim would not create an inconsistency with any existing state law preemption cases concerning footwear.

Norfolk relies heavily on the goal of uniformity within the locomotive industry regulatory scheme as a reason to find for preclusion. Although the LIA's "broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines," *Law v. General Motors Corp.*, 114 F.3d 908, 910 (9th Cir. 1997), the danger of non-uniformity is much greater from multiple and independently evolving state tort and regulatory claims than from federal FELA claims which, after all, are based upon the same federal law. In *Law*, a case cited by Norfolk to support its uniformity argument, the Ninth Circuit found that although the BIA served to preempt state law claims brought by a railroad employee alleging hearing loss injuries, the plaintiffs were "not without a remedy" since FELA allowed for recovery, and that "[t]his remedy is strong medicine."*Id.* at 912. Becraft is permitted to take advantage of that same remedy.

## CONCLUSION

For the foregoing reasons, Norfolk's Motion for Summary Judgment [DE 19] is **DENIED**.

**SO ORDERED**.

ENTERED: June 5, 2009

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
